163 So.2d 442 (1964)
A. C. RIGDON et al., Plaintiffs-Appellees,
v.
MARQUETTE CASUALTY COMPANY et al., Defendants-Appellants.
No. 10162.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1964.
Rehearing Denied April 30, 1964.
Writ Refused June 26, 1964.
*443 Morgan, Baker, Skeels & Coleman, Shreveport, for Marquette Cas. Co. and New Hampshire Fire Ins. Co., defendants-appellants.
Gahagan & Gahagan, Natchitoches, for Houston Fire and Cas. Ins. Co., defendant-appellant.
Bethard & Bethard, Coushatta, for A. C. Rigdon and T. S. Rigdon, plaintiffs-appellees.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
Our esteemed brother of the district court has so ably stated the issues, reviewed the facts, and applied the law that, although urged to the contrary, we, from our own consideration of the record, are unable to point out manifest error in the conclusions reached by him. We therefore adopt a major portion of his opinion as our own.
"This action is brought by plaintiffs, A. C. Rigdon and T. S. Rigdon, against Marquette Casualty Company, New Hampshire Fire Insurance Company, and Houston Fire and Casualty Insurance Company to collect the proceeds allegedly due on three certain fire insurance policies written by them, as follows: Marquette Casualty Company, $2,000; New Hampshire Fire Insurance Company, $3,000; and Houston Fire and Casualty Insurance Company, $5,000.
"In plaintiffs' petition recovery is sought of $7,500 under the terms of the policies, and this amount is sought on a pro rata basis of the face amount of the respective policies. Plaintiffs alleged that this amount is the value, or replacement cost, of the dwelling destroyed by fire during the term of all the policies.
"Additionally, statutory penalties of 25 percent are sought on the ground *444 that the defendants acted arbitrarily, capriciously and without probable cause in failing to pay the plaintiffs the proceeds under the policies.
"The facts are briefly these: Plaintiff, A. C. Rigdon, obtained, on May 2, 1961, a fire insurance policy from Marquette Casualty Company, through the Tyler Insurance Agency of Coushatta, in the amount of $2,000. On June 13, 1961, he obtained a policy in the amount of $3,000 from New Hampshire Fire Insurance Company, through C. E. Edgerton Agency, Inc., of Coushatta. Neither company knew of the existence of the other policy.
"This, of course, made a total amount of fire insurance of $5,000. This was the amount the plaintiff was seeking on his property.
"Under an avowed purpose of desiring to obtain his insurance coverage in one policy, sometime in November, 1961, plaintiff contacted the Womack Agency of Hall Summit, owned and operated by Elton L. Womack, with the request that a policy of fire insurance be written on his dwelling in the amount of $5,000. On February 8, 1962, a fire policy in this amount was written by Womack Agency in Houston Fire and Casualty Insurance Company. It was mailed to plaintiff but not received by him until after his property was destroyed by fire on the night of February 9, or early morning hours of February 10, 1962.
"This court finds as a fact that plaintiff, A. C. Rigdon, disclosed to Womack that he had policies outstanding in the amount of $5,000 issued by Tyler and Edgerton Agencies. Womack admits having knowledge of the Edgerton policy, but denied knowledge of the policy issued by Tyler. There would be no reason for Rigdon to disclose the $3,000 policy issued by Edgerton and withhold information about the $2,000 policy issued by Tyler. He advised Womack that he would cancel these policies, presumably at their anniversary date.
"At the time the residence of plaintiff was destroyed by fire, he was a patient in a hospital in Coushatta. Mr. Elton L. Womack testified that no one knew, and certainly the plaintiffs did not, that this policy was written by him. So emphatic in this was Mr. Womack that he testified not even his own wife knew this, and she works with him in the agency.
"Proof of loss was submitted to collect the proceeds of these three policies, but payment was denied and the claim rejected.
"This action is defended by all three defendants, mainly on the ground that the prohibition against OTHER INSURANCE was violated and that this violation resulted in an increase in the moral hazard of the risk. This is the only serious defense to liability of the defendants, and the only defense which this court considers worthy of discussion.
"It is true that all three policies contain a prohibition against other insurance. However, a breach of that policy condition alone will not suffice unless the violation is brought with the provisions of LSA-R.S. 22:692, which provides:
"Breach of warranties and conditions of fire policies and applications therefor
"`No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy or in the application therefor. Such breach shall not avail the insurer to avoid liability unless such breach (1) *445 shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, or (2) shall be such a breach as would be a violation of a warranty or condition requiring the insurer to take and keep inventories and books showing a record of his business. Notwithstanding the above provisions of this Section, such a breach shall not afford a defense to a suit on the policy if the fact or facts constituting such a breach existing [sic] at the time of the issuance of the policy and were, at such time, known to the insurer or to any of his or its officers or agents, or if the fact or facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents, except in case of fraud on the part of such officer or agent or the insured, or collusion between such officer or agent and the insured. Amended and reenacted Acts 1958, No. 125.'
"The phrase that captures our attention is "* * * Such breach shall not avail the insurer to avoid liability unless such breach (1) shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, * * *'
"No contention is made that there is any increase in the physical hazard because such is not applicable to this type violation.
"44 C.J.S. Insurance Section 49, page 498, defines Hazard; moral hazard, as follows:
"`Hazard, in insurance law, is the risk, danger, or probability that the event insured against may happen, varying with the circumstances of the particular case, the incurring of the possibility of loss or harm, for the possibility of a benefit. Moral hazard, as respects fire insurance, is the risk or danger of the destruction of the insured property by fire, as measured by the character and interest of the insured owner, his habits as a prudent and careful man or the reverse, his known integrity or his bad reputation, and the amount of loss he would suffer by the destruction of the property or the gain he would make by suffering it to burn and collecting the insurance.'
"Our Supreme Court of Louisiana, in interpreting LSA-R.S. 22:692 (formerly Act 222 of 1928), in Lee v. Travelers Fire Insurance Company, 219 La. 587, 53 So.2d 692, made the following comment:
"`Heretofore, this court has had occasion to interpret these provisions.
In Knowles v. Dixie Fire Insurance Company of Greensboro, North Carolina, 177 La. 941, 149 So. 528, 531, the plaintiff sought recovery on an insurance policy for the loss by fire of insured personal property. The defense was that there existed at the time of the loss an undisclosed encumbrance on the property in violation of the policy's chattel mortgage clause. In favoring plaintiff's demand the court announced certain principles respecting the proof required under the 1928 statute as follows:
"`In view of the plain provisions of this act, the fact alone that the personal property covered by the policy is or becomes incumbered by a chattel mortgage does not of itself void the policy. On the contrary, if a violation of the chattel mortgage clause in the policy is pleaded as a defense, the insurer must show that a breach of the warranty or condition in this respect did in fact increase the moral hazard. Defendant in this case made no effort to show that the moral hazard was increased, *446 but defended upon the sole ground that the property insured was incumbered at the time of the loss.
* * * * * *
"`"Under Act No. 222 of 1928, p. 291, the question whether the existence of the chattel mortgage on the property subject to the insurance at the time of the loss increases the moral hazard is one of fact which must be determined by the circumstances surrounding each case.
"`"In order that an insurer may avoid liability under a fire policy on the ground that the moral hazard was increased by a breach of the warranty contained in the chattel mortgage clause, it carries the burden of showing that the changed conditions brought about by the imposition of the mortgage were of such real and substantial character as might influence the insured in his conduct and attitude toward the property. The term `moral hazard' as used in the act and in the decisions relates to the pecuniary interest which the insured or some other person has either in protecting the property from loss by fire or destroying it. The moral hazard is least when the pecuniary interest of the insured in protecting it is greatest. It is greatest when his pecuniary interest is such that he might gain most by burning it. * * *
* * * * * *
"`"If the property insured is mortgaged for an insignificant amount, an amount out of all proportion to its value, it is not probable that the mere fact of the existence of the mortgage would be an inducement or temptation to the owner for burning it. He would have no pecuniary interest in doing so. On the contrary, if he were able to secure a mortgage on the insured property for its full value or an amount approximating its value, he would gain by destroying it. In such case he would have no interest in protecting it, and might gain by destroying it. * * *
"`"Another feature which might enter into the question whether the existence of a mortgage on the property at the time of the loss would increase the moral hazard would be whether the owner was able to make his payments. If he were not and had lost hope, a burn might be a relief, and the mortgagee might feel the same way.
"`"Another circumstance to be considered would be whether the amount of the mortgage at the time of the loss had been reduced from its original amount and to what extent. Under the act, it is not the amount of the mortgage as originally given which is to be considered but the amount `at the time of the loss.'
"`"What the act means is that, if at the time of the loss, not at any previous time during the life of the policy, there exists such a breach as would reasonably be said to increase the moral hazard, then the policy is void. No hard and fast rule can be laid down as to when such a breach exists. Each case must be determined according to its own facts and circumstances, and this is true whether the hazard be moral or physical. In either event, a plea that the policy has been rendered void by such a breach is a special defense which defendant must maintain in order to avoid liability. * * *"'
"`The 1928 statute was considered again in Brough v. Presidential Fire & Marine Insurance Company, 189 La. 880, 181 So. 432, 434, the defense to the action on a fire insurance policy therein being that the insured building was *447 not on ground owned by the plaintiff in fee simple as required by the contract. The court quoted from the Knowles case and said: "In view of the plain provisions of Act 222 of 1928, the fact alone that plaintiffs did not have a fee-simple title to the ground upon which the insured building was erected does not of itself void the policy. On the contrary, if a violation of the clause as to ownership in fee simple by the insured is pleaded as a defense, the insurer must show that a breach of the warranty or condition in this respect did in fact increase the moral hazard. Defendant company in this case made no such defense, but relied on the sole ground that plaintiffs did not have a title in fee simple to the ground on which the insured building was erected."
"`The Court of Appeal of the Orleans Circuit followed the Knowles and Brough cases in Rickerfor v. Westchester Fire Insurance Company of New York, 186 So. 109, 111, and with reference to them it observed:
"`"* * * Our appreciation of the court's opinion in the Brough Case is that the Act of 1928 affords an escape to the insurer only in cases where the surrounding circumstances existing at the time of the loss were such as to warrant the conclusion that the insured would be in a better position, in the event his property was destroyed by fire, then [sic] he would have been if the fire occurred at the inception of the contract and that the insured's more favorable position at the time of the loss is directly attributable to his false representation. By this, we do not mean that the insured must necessarily gain as a result of the loss but that the false representation, when considered in connection with the circumstances existing at the time of the loss, was such as to sustain a holding that the insured would suffer less by a destruction of the property than would ordinarily be the case in the absence of his breach.
* * * * * *
"`"* * * The Supreme Court has stated in the Knowles and Brough Cases that, where an insurance company seeks to avoid liability because of the breach of a material warranty contained in the policy, the defense must be pleaded specially and that the insurer has the burden of proving by a preponderance of evidence that the breach did increase the moral hazard of the risk. Inasmuch as that court has also said that the mere breach is of itself insufficient to establish the increase of hazard, it is necessary for the insurer to set forth the particular circumstances existing at the time of the loss upon which it relies to show that the hazard was in fact increased. * * *'"
"This court finds as a fact that the plaintiff, A. C. Rigdon, disclosed to Elton L. Womack the existence of the other insurance. Therefore, under the very provisions of LSA-R.S. 22:692, supra, the defense is untenable for Houston Fire and Casualty Insurance Company.
"As to the other defendants, as between themselves, the existence of each policy against the other, there was no increase in the moral hazard of the risk. These defendants have not sustained the burden of proving that the value of the plaintiff's residence was such that $5,000 in insurance was more than adequate to cover the risk.
"Next, the court will consider what effect the existence of the Houston Fire and Casualty Insurance Company policy will have in increasing the moral hazard of the risk of defendants, Marquette and New Hampshire. It is true that $10,000 worth of insurance on *448 a $7,500 residence presents a serious question of increase in moral hazard. The Supreme Court has said in Knowles v. Dixie Fire Insurance Company of Greensboro, North Carolina, supra, that `No hard and fast rule can be laid down as to when such a breach exists. Each case must be determined according to its own facts and circumstances, and this is true whether the hazard be moral or physical.'
"The question in this court's mind is this: How can the moral risk be increased under the peculiar facts and circumstances of this case when the plaintiff had no knowledge whatever that the Houston Fire policy had been written? The thought or vein running through all the cases on this question of moral hazard and the increase thereof is the operation of an awareness or a consciousness that one would be better off if a loss occurred, and there exists a dullness of sensibilities to prevent the occurring of a loss. Plaintiff, A. C. Rigdon, was sick in the hospital unaware of the existence of the fact that allegedly has increased or made undersirable the risk assumed by the insurance companies in issuing the fire policies in question.
"The defendants have not sustained the burden of showing an increase in moral hazard such as would allow them to escape liability under the provisions of LSA-R.S. 22:692, supra."
We are nevertheless of the opinion that the issuance of the policy by the defendant Houston Fire and Casualty Insurance Company did not constitute a contract of insurance between it and the named assured. The issuance and submission of this policy were, under the facts of this case, in the nature of a counter-proposal which was never accepted by the proposed assured.
As heretofore observed, during November, 1961, plaintiff contracted this defendant's agent and requested that a fire insurance policy be written on his dwelling in the amount of $5,000. The purpose expressed by plaintiff Rigdon was that he desired to consolidate his insurance in one policy affording coverage in that amount. After a lapse of several months, and finally on February 8, 1962, this defendant's policy was mailed by its local agent to the proposed assured. This policy was accompanied by a note of defendant's agent to plaintiff Rigdon which read:
"A.C.
"Sorry this is late but I had to do some maneuvering to make sure it wouldn't be cancelled. If I'm too late, just send it back and thanks a million for remembering me."
Indicative of the language used and the delay ensuing after Rigdon contacted defendant's agent is the thought that Rigdon might not want the policy then and that it was forwarded for his acceptance or rejection. The language of the notation indicates rather clearly that the agent's communication and policy were merely an offer to insure.
As in the case of contracts generally, it is prerequisite to the creation of a contract of insurance that there be an offer or proposal by one party and an acceptance by the other. While such an agreement usually is effected by an offer by one seeking insurance through an application and its acceptance by the company, such procedure is not exclusive. An offer or a counteroffer to insure may be made by an insurer to a proposed insured. Thus, where the company, instead of accepting an application for insurance, makes a counteroffer or proposition, this may be accepted or rejected by the applicant, or proposed, insured at his pleasure. Until accepted, the proposal does not become a contract. The acceptance of such a proposal must be shown by some act binding on the party accepting beyond a mere mental resolution *449 to that effect. The general rule is as stated in 44 C.J.S. Insurance § 232, p. 980:
"* * * Where the proposal to insure comes from the insurance company, it must be accepted by the person to be insured, who must notify the company of his acceptance; and if his acceptance is sent by mail the risk begins when the letter of acceptance is mailed. An acceptance after the fire occurs comes too Alate." (Emphasis supplied.)
The rule is recognized in this State that generally contracts of insurance are conditioned upon the existence of the subject of insurance at the time of contracting. Broome v. State Farm Mutual Automobile Ins. Co., La.App., 4th Cir., 1963, 152 So.2d 827; LSA-C.C. Arts. 1823, 1833, 1896.
Moreover, the policy was issued under a suspensive condition. This is made certain by both plaintiff A. C. Rigdon and defendant's agent, Elton Womack. Rigdon testified, on learning that Womack, a friend of his, was selling insurance, he resolved to place his insurance with Womack and consolidate the two policies already covering his residence into one policy, if Womack could issue a policy for $5,000 covering the residence. Rigdon explained he was not trying to get "double" insurance. Then followed this series of questions and answers:
"Q. Did you tell Mr. Womack that, if he would issue the policy, you would cancel the other policies?
"A. I did.
"Q. In other words, it was your intention to have only five thousand dollars insurance on the house?
"A. That was my intention.
* * * * * *
"Q. Now, did you make an agreement with Mr. Womack concerning the cancellation of other insurance that you have?
"A. Yes, Sir. I told him that I would cancel the other two policies if he would give me five thousand ($5,000) [insurance]."
From this testimony, it can only be concluded that the policy issued by the defendant Houston Fire and Casualty Insurance Company was to become effective upon the cancellation of the two prior policies. These former policies were never canceled by plaintiffs. In fact, this defendant's policy was not received until the subject matter of the proposed insurance had been destroyed by fire. The condition upon which the policy was to become effective was not complied with.
We therefore conclude there was no effective, binding contract of insurance between defendant Houston Fire and Casualty Insurance Company and plaintiff Rigdon at the time the fire occurred, destroying his residence.
We may further observe that two of the defendants question the interest of T. S. Rigdon as an assured. In this regard, we may point out there is no contention between A. C. Rigdon and his father. Both testified that the residence was the property of A. C. Rigdon. This fact was explained to defendants' agents before or at the time the policies were issued. It was through the agents' suggestions that T. S. Rigdon, inasmuch as he was the owner of the land upon which the building was located, was designated the insured. There was no misrepresentation made by A. C. Rigdon to these defendants; they, through their agents, were fully informed of the facts. It would not appear that defendants could, under these facts, in good conscience, rely upon this defense; they are precluded and estopped from so doing.
Moreover, it may be observed that T. S. Rigdon is not wholly without an insurable interest. Under LSA-C.C. Art. 508,
*450 "When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same. * * *"
This article further provides:
"If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby. * * *"
Therefore, it cannot be said that A. C. Rigdon did not also have an insurable interest.
We held in The Forge, Inc., v. Peerless Casualty Company et al., La.App., 1961, 131 So.2d 838, that the valued policy law precludes insurers from questioning the extent of the interest of an insured and requires payment to the insured of the full face value of the policy in the event of total loss, even though the interest of the insured is less than full ownership.
Plaintiffs' demands for penalties and attorneys' fees were rejected for the lack of proof that the defendants were arbitrary and capricious and were without probable cause in their refusal to recognize the claims of the plaintiffs under the policies. The defenses urged were serious and presented in good faith. Hence, we find no merit in the matters encompassed in plaintiffs' answer to the appeal.
Accordingly, for the reasons assigned, it is Ordered, Adjudged, and Decreed that plaintiffs' demands as against the defendant Houston Fire and Casualty Insurance Company be, and they are hereby, rejected, and, as thus amended, the judgment appealed is affirmed. Plaintiffs are assessed with the cost of this appeal.
Amended and affirmed.