467 So.2d 1220 (1985)
McKENZIE & MOUK, INC., Plaintiff-Appellee,
v.
Dexter HALL, Defendant-Appellant.
No. 16842-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1985.
*1221 Culpepper, Teat, Caldwell & Avery by Darrell R. Avery, Jonesboro, for plaintiff-appellee.
North Louisiana Legal Assistance Corporation by David A. Titman, Monroe, for defendant-appellant.
Before HALL, JASPER E. JONES and SEXTON, JJ.
HALL, Judge.
The plaintiff insurance agency, McKenzie & Mouk, Inc., sued the defendant, Dexter Hall, to recover $414.87 allegedly owed as the balance on an automobile insurance policy premium plus late charges. Defendant denied owing the balance sued for, pleading that the premium of $99.00 agreed upon had been paid. After trial, the city court found that defendant owed $271.00 for the balance of the premium due and $122.93 for late charges. Judgment was rendered for $393.93 and the defendant appealed. We reverse and render judgment in favor of the defendant, rejecting the plaintiff's demands.
In December 1981, defendant's adoptive sister, Mamie Green, went to the insurance agency in Ruston to inquire about insurance for herself and also to inquire about automobile insurance for the defendant. Mrs. Humphries, an employee of the agency, quoted Mrs. Green a premium price of $99.00 for a policy providing six months coverage. Mrs. Humphries testified that the amount of the premium was subject to a determination that Dexter Hall had a clear driving record, but her testimony does not reflect that this condition was communicated to Mrs. Green. Mrs. Humphries *1222 filled out a binder-application form which was not signed by Mrs. Green. Mrs. Green was given a receipt by Mrs. Humphries showing payment of the $99.00 premium for a six-month policy for Dexter Hall.
The application was submitted by the insurance agency to Commercial Union Insurance Company. It was determined that Dexter Hall had been involved in an accident and had received a speeding ticket, and that the company would charge a premium of $343.00 for the six-month policy.
The agency sent Mrs. Green a note advising that it had received the new policy for Dexter Hall, and due to his driving record there would be a higher premium of $343.00. The note advised Mrs. Green to "Please call us and advise if you wish to keep the policy and we will mail it on to you".
Mrs. Green testified that when she received the note, she called the agency and told them that she did not want the policy at the higher premium. Mrs. Humphries denied that she was contacted by Mrs. Green. Mrs. Humphries testified that later, in spite of not having heard from Mrs. Green, the agency mailed the policy and the statement for the premium to Dexter Hall at Mrs. Green's address. Mrs. Green denied ever receiving the policy. Mrs. Humphries testified she never heard from Mrs. Green, and Mrs. Green testified that she told the people at the agency on several occasions that she did not want the policy.
This suit ultimately ensued.
The trial court found that the insurance company was justified in charging the higher premium after obtaining information as to the defendant's driving record. The court felt that the full amount of the premium charged was due because the policy was issued, neither the defendant nor Mrs. Green notified the agency or the company to cancel the policy, and the insurance was in effect for the six-month period.
It is clear that a representative of the plaintiff insurance agency and a representative of the defendant agreed that a six-months' policy would be issued for a premium of $99.00. This agreement may or may not have been conditioned upon defendant having a good driving record, but, in any event, there is no evidence that defendant's representative agreed to pay a higher premium.
To the extent coverage existed on the date the application was made and the $99.00 premium was paid to the agent, this coverage existed because a binder became effective at that time and not because a policy of insurance became effective at that time. The following language from the form filled out by Mrs. Humphries and submitted to the insurance company shows that the insurance company viewed the form as binding the company only for a short time and then only subject to certain conditions; the form was otherwise viewed simply as an application for insurance:

IMPORTANT
The Company ... hereby binds insurance in favor of the insured ... from 12:01 AM of the "EFFECTIVE DATE" and terminating at 12:01 AM on the thirtieth day following such date for the coverages and limits of liability indicated ... to all of the terms of the policy for which this application is made.
Upon acceptance of the application by the company and the issuance of a policy to the Named Insured, this binder shall be null and void as of the effective date of the policy. If no policy of insurance is issued in place of this binder, a premium charge at the rates and in accordance with the rules of the Manual of Rates in use by the Company when this binder becomes effective shall be made for the time this binder is in effect. This binder may be cancelled at any time by the Insured, or by the company upon written notice to the insured at the address of the Insured above stating when thereafter cancellation shall be effective and the date of the cancellation shall be the end of the binder period."
An application for coverage merely constitutes a contractual offer, and the *1223 insurance contract is not completed until the application is accepted by the insurer. Kieffer v. Southern United Life Ins. Co., 437 So.2d 919 (La.App. 2d Cir.1983) writ denied, 246 La. 578, 442 So.2d 456 (1983). When it was determined by the insurance company to whom the application was submitted that a higher premium should be charged, the insurance agency, apparently recognizing that there was no agreement for the issuance of a policy at a higher premium, wrote Mrs. Green asking her if she wished to keep the policy and, if so, to so advise the agency. In effect, the agency was making a new offer or counteroffer to the defendant to issue a policy at a higher premium. As this court stated in Rigdon v. Marquette Casualty Company, 163 So.2d 442 (La.App. 2d Cir.1964) writ denied, 246 La. 578, 165 So.2d 480 (1964), while a contract of insurance ordinarily is effected by an offer by the one seeking insurance and an acceptance by the insurance company, such is not always the case:
An offer or a counteroffer to insure may be made by an insurer to a proposed insured. Thus, where the company, instead of accepting an application for insurance, makes a counteroffer or proposition, this may be accepted or rejected by the applicant, or proposed, insured at his pleasure. Until accepted, the proposal does not become a contract. The acceptance of such a proposal must be shown by some act binding on the party accepting beyond a mere mental resolution to that effect. (Emphasis Added)
Whether Mrs. Green specifically advised the agency that she did not want the policy or whether Mrs. Green never contacted the agency is immaterial. In either event, the new offer or counteroffer was never accepted by the defendant or his representative. There was never any agreement on the part of the defendant or his representative to pay the higher premium. The fact that the insurance company elected to issue a policy at a unilaterally established premium cannot serve to establish any obligation on the part of the defendant to pay the higher premium.
The defendant paid the premium he agreed to pay and is liable for nothing more.
For the reasons assigned the judgment of the city court is reversed and judgment is rendered in favor of defendant and against plaintiff, rejecting plaintiff's demands. All costs of this suit, including the cost of appeal are assessed to the plaintiff-appellee.
REVERSED AND RENDERED.