618 So.2d 1091 (1993)
LOUISIANA COMMERCIAL BANK, et al., Plaintiffs,
v.
GEORGIA INTERNATIONAL LIFE INSURANCE COMPANY, et al., Defendants.
No. 91 CA 1618.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Writ Denied July 1, 1993.
*1092 Martin A. Stern, New Orleans, for defendant Georgia Life.
Edward J. Levert, Jr., New Orleans, for plaintiff Rathe.
Mitchell J. Hoffman and Michael R. Allweiss, New Orleans, for plaintiffs Greenwald, Pontchartrain, Roux & Hoffman.
Paul J. Mirabile, Middleberg Riddle & Gianna, New Orleans.
Before CARTER, LeBLANC and PITCHER, JJ.
PITCHER, Judge.
Defendant, Georgia International Life Insurance Company (Georgia International), appeals from an adverse judgement in the trial court in a suit to recover benefits *1093 under a life insurance policy. The trial judge held that Georgia International was at fault in issuing a policy of insurance to its insured, Noel "Butch" Baum (Baum), with an aviation exclusion without notification, in contravention of its own, and industry standards. Plaintiff, Louisiana Commercial Bank, answered and then cross-appealed assigning as error to the trial court's finding that Georgia International did not breach the provisions of LSA-R.S. 22:617 and that the amount of damages awarded to the plaintiff should be reduced by the amount of negligence ascribed to Baum. We reverse.

FACTS
Baum and nine business associates purchased Louisiana Commercial Bank in early 1986. After their purchase, and at the urging of Baum, the members of the investment group agreed to individually buy life insurance in the amount of one million eight hundred thousand ($1,800,000.00) dollars, the amount equal to their individual investments. Baum, a career life insurance agent and owner of Butch Baum & Associates, undertook the responsibility of acquiring the insurance policies for the investment group. He first contacted State Mutual Life Assurance Company of America, the company through which he wrote the majority of his insurance. State Mutual agreed to write the insurance on Baum's co-investors, but refused to underwrite coverage on him. Baum had over $19,000,000.00 in life insurance coverage, almost $13,000,000.00 of which was with State Mutual.
After Baum was unable to secure insurance on himself through State Mutual, he contacted Milton Pullen, an acquaintance who lived in North Carolina and who was also involved in the life insurance business. Milton Pullen, unable to help Baum personally, referred Baum's insurance request to his brother, John, who attempted to help Baum secure a policy through Integrated Resources Life Insurance Company. This effort was unsuccessful because of the amount of insurance Baum had in force at the time, and because of the tremendous amount of time he spent piloting his own plane.
John Pullen then referred Baum to Edward Johnson, another North Carolina independent life insurance agent. Johnson submitted Baum's application to Georgia International Life Insurance Company seeking $1,800,000.00 in insurance coverage. In his deposition, Neil Crawford, Georgia International's chief underwriter, testified he reviewed Baum's application and agreed to issue the policy, but only upon two conditions. First, the policy would only be written for $1,000,000.00 of coverage; and second, the policy would contain an aviation exclusion. Edward Johnson, in his deposition testified that he contacted Baum and informed him of Georgia International's conditions of coverage. Baum accepted the reduced coverage in writing and paid the initial premium of $13,920.00. Baum's acceptance however, made no reference to an aviation exclusion.
Georgia International issued policy number 00394995B to Baum on April 7, 1986, for $1,000,000.00. The policy contained an aviation exclusion. Neither the declaration page, nor delivery voucher made reference to the aviation exclusion. However, the policy cover sheet admonished Baum to read the policy carefully, and it also advised him that he had a right to return the policy within twenty days of receipt and receive a full refund of the premium if he was dissatisfied for any reason.
On June 4, 1987, Baum died from injuries sustained in the crash of an airplane he was piloting. Subsequently, Georgia International denied coverage to the named beneficiary, Louisiana Commercial Bank, on the basis of the aviation exclusion and refunded the premiums paid pursuant to the terms of the policy.

PROCEDURAL HISTORY
On September 11, 1987, Louisiana Commercial Bank filed this suit against Georgia International and Butch Baum & Associates, Inc., seeking the full recovery of the death benefits under the policy. The petition was amended to include a claim for a penalty in the form of interest at the rate *1094 of 8% per annum. Pontchartrain State Bank, as successor in interest to Louisiana Commercial Bank, filed a motion to substitute counsel, but it did not move to be substituted as plaintiff. A petition for intervention was filed by E. Lance Greenwald and Roland B. Juneau, as Trustees of the Louisiana Commercial Bank Voting Trust, and E. Lance Greenwald, Kermit Roux and Mitchell J. Hoffman. The intervenors adopted the allegations of the original petition, but additionally alleged that the policy should be reformed to reflect that they are the owners and beneficiaries.
Pontchartrain State Bank and intervenors filed a motion for summary judgment against Georgia International, who in turn filed a cross-motion for summary judgment. One of the issues before the trial court on Summary Judgment was whether the aviation exclusion constituted an alteration. While these matters were under advisement by the trial judge, a second intervention was filed by Robert and Joan Rathe, who claimed they were entitled to recover because as shareholders of the voting trust in Louisiana Commercial Bank. The trial judge denied both motions, and specifically found that Baum's application was not altered within the meaning of LSA-R.S. 22:617. Butch Baum & Associates filed for bankruptcy and an automatic stay was in effect. Georgia International then filed a motion to sever the claims against them and Butch Baum & Associates, which was granted by the trial judge. A second motion for summary judgment and cross-motion were filed by Georgia International and Louisiana Commercial Bank. The motions were taken under advisement and denied by the trial judge.
During the trial, Louisiana Commercial Bank offered the testimony of Frank Friedler, Jr. as an expert in the life insurance industry. Mr. Friedler was questioned extensively regarding industry standards for notifying insureds of the insertion of exclusions into insurance policies. He testified it is the standard practice within the industry to highlight aviation exclusions on the delivery voucher or on the declaration page of a policy.
After trial on the merits, the trial court found no applicability of LSA-R.S. 22:617, but did find that Georgia International was at fault in issuing the policy with an aviation exclusion to Baum without notification in contravention of its own and industry standards. The trial court further found that Baum was also negligent for having accepted the policy with the aviation exclusion and, as such, was fifty percent at fault. Furthermore, the Court found that Louisiana Commercial Bank had been damaged in an amount equal to the amount they were denied in benefits under the policy, minus the percentage of fault ascribed to Baum. Judgment was therefore awarded in the amount of $535,432.61. After a denial of the parties' motion for new trial, Georgia International appealed the trial court's decision. Louisiana Commercial Bank answered and then filed a cross-appeal. The Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver and liquidator, has been substituted as Plaintiff-Appellee for Louisiana Commercial Bank.
Georgia International has set forth eight assignments of error for our review:
1. The district court erred in failing to give effect to the aviation exclusion which clearly and unambiguously excludes coverage for Mr. Baum.
2. The district court erred in admitting parole evidence where the contract of insurance is clear and unambiguous.
3. The district court erred in finding that the policy proceeds could be awarded in tort where the only duty to pay policy proceeds is contractual in nature.
4. The district court erred in finding that the policy proceeds could be awarded in tort where a tort cause of action was never pled.
5. The district court erred in holding that an insurer has a duty to highlight an aviation exclusion in a delivery voucher or in a declaration page.
6. The district court erred in admitting expert testimony where the question before the court was simply whether insurance coverage is owed under the controlling law.

*1095 7. Even assuming that there could be a tort recovery and that an insurer has a duty to highlight an aviation exclusion in a delivery voucher or in a declarations page, the district court erred in awarding a tort recovery where the evidence showed that the insured gave his express consent to the aviation exclusion.
8. The district court erred in failing to give the deposition testimony of unavailable witnesses weight equal to that of live witnesses, if it considered their testimony at all.
Louisiana Commercial Bank, on cross-appeal, has set forth the following assignments of error for our consideration:
1. The trial court erred in not finding that Georgia International Life Insurance Company breached the provisions of LSA-R.S. 22:617.
2. The trial court erred in permitting Georgia International Life Insurance Company to rely on the aviation exclusion even though it was improperly included in the policy as a result of the illegally altered application.
3. The trial court erred in awarding recovery to the plaintiffs on only one theory, i.e. tort, and not on two theories, i.e., tort and breach of LSA-R.S. 22:617.
4. The trial court erred in reducing the amount of recovery awarded to the plaintiffs by the amount of negligence of Mr. Baum.

Louisiana Commercial Bank's Assignments of Error

ASSIGNMENT OF ERROR NUMBER 1
Louisiana Commercial Bank contends that the trial judge erred in not finding that Georgia International breached the provisions of LSA-R.S. 22:617.
LSA-R.S. 22:617 provides as follows:
A. Any application for insurance in writing by the applicant shall be altered solely by the applicant or by his written consent, except that insertions may be made by the insurer for administrative purposes only in such manner as to indicate clearly that such insertions are not to be ascribed to the applicant.
B. Any insurer issuing an insurance contract upon such an application unlawfully altered by its officer, employee, or agent shall not have available in any action arising out of such contract, any defense which is based upon the fact of such alteration, or as to any item in the application which was so altered.

THE CONTRACT OF INSURANCE
Our first inquiry is to determine whether a contract of insurance existed between the parties.
The law is well settled that an application for insurance merely constitutes a contractual offer, and the insurance contract is not completed until the application is accepted by the insurer. McKenzie & Mouk, Inc. v. Hall, 467 So.2d 1220, 1222-23 (La.App. 2nd Cir.1985); Kieffer v. Southern United Life Insurance Company, 437 So.2d 919, 921 (La.App. 2nd Cir.), writ denied, 442 So.2d 456 (La.1983). Thus where a company, instead of accepting an application for insurance, makes a counter offer, this may be accepted or rejected by the applicant at his pleasure. Until accepted, the counter offer does not become a contract. Rigdon v. Marquette Casualty Company, 163 So.2d 442, 448 (La.App. 2nd Cir.), writ refused, 246 La. 578, 165 So.2d 480 (La.1964).
We find that a contract of insurance was confected between the parties. Baum's application for $1,800,000.00 of insurance was submitted to Georgia International and was not accepted. Instead, Georgia International made a counter offer to insure Baum for $1,000,000.00. Baum sent a letter to Georgia International accepting their counter offer and tendered the sum of $13,920.00 as the initial premium. Therefore, a contract of insurance was consummated. Georgia International inserted an aviation exclusion in the policy and then mailed the policy to Baum. We do not find that these actions of Georgia International constituted an alteration of Baum's application under LSA-R.S. 22:617, and the trial court was correct in so holding. See, Harper v. Reserve Life Insurance *1096 Company, et al., 499 So.2d 986 (La. App. 3rd Cir.1986).
In view of our finding in the foregoing assignment of error and our findings discussed below, Louisiana Commercial Bank's assignments of error 2, 3, and 4 are rendered meritless.

Georgia International's Assignments of Error
We will pretermit addressing assignments of error numbers 1, 2, 3, 4, 6, 7, and 8 and go directly to number 5, in that it goes straight to the heart of the district court's decision.

ASSIGNMENT OF ERROR NUMBER 5
Georgia International contends that the district court erred in finding that an insurer has a duty to highlight an aviation exclusion in a delivery voucher or in a declarations page. They assert that their actions were in compliance with the Louisiana Insurance Code, and that the district court's conclusion as to what "industry standards" require is at odds with the law.

INDUSTRY STANDARDS
To say that Georgia International complied with the Louisiana Insurance Code when they inserted the aviation exclusion into Baum's policy does not resolve the issue of whether their compliance would give way to "industry standards". To put it another way, can the insurance industry impose a legal duty upon insurers that is higher than the duty imposed by law? We think not.
The determination of a legal duty which obliges the defendant to protect the plaintiff from the risk presented is a legal question for the trial court to determine. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). The particular facts and circumstances of each individual case determine the extent of the duty and the resulting degree of care necessary to fulfill the duty. Kent v. Gulf States Utilities Company, 418 So.2d 493, 497 (La.1982).
The fundamental principle of the Louisiana Insurance Code is that the business of insurance is regulated by the state in the public interest. LSA-R.S. 22:2; Fireside Mutual Life Insurance Co. v. Martin, 223 La. 583, 66 So.2d 511, 514 (La.1953). Therefore, insurance companies must look to the insurance code to determine what standards they are to follow when doing business in the State of Louisiana. To allow a statutory scheme for regulating the insurance industry to give way to something as nebulous and uncertain as the standard practice of the industry would defeat the state's interest in establishing uniform and minimum standards for insurance companies to follow when operating in this state. To affirm the trial court's judgment would, in effect, place the insurance industry in the business of "regulating" in an area that has been reserved by the state under its policy powers, and would be in violation of law and public policy.

INSURANCE CODE REQUIREMENTS
Georgia International, in support of its contention that it was in compliance with the Louisiana Insurance Code, relies upon LSA-R.S. 22:620, LSA-R.S. 22:628, and LSA-R.S. 22:654.
LSA-R.S. 22:620 provides, in pertinent part:
"Any insurer may insert in its policies any provision or conditions required by its plan of insurance or method of operation which are not prohibited by the provisions of this Code."
This statute simply means that in the absence of conflict of laws or policy, an insurer has the same right to limit its liability and impose whatever conditions it pleases upon its obligation under the policy. Hall v. National Life & Accident Insurance Company, 383 So.2d 74, 76 (La.App. 3rd Cir.1980). In such event, unambiguous provisions in the insurance contract limiting liability must be given effect. Benton Casing Service, Inc. v. Avemco Insurance Company, 379 So.2d 225, 227 (La.1979).
LSA-R.S. 22:628 provides, in pertinent part:
"No agreement in conflict with, modifying, or extending the coverage of any *1097 insurance contract of insurance shall be valid unless in writing and made a part of the policy. This section shall not apply to the contracts as provided in Part XV of this Chapter."
The object of the statute is to assure full notification to the insured of all relevant provisions of his insurance contract. Furthermore, the legislature has determined this object can only be attained by mandating the actual attachment of such modifying provisions to the insurance policy. Spain v. Travelers Insurance Company, 332 So.2d 827, 830 (La.1976).
LSA-R.S. 22:654 provides, in pertinent part:
"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy."
This statute tells us that the insurance contract is construed as a whole, and one part is not construed separately at the expense of disregarding other sections or provisions. Central Louisiana Electric Co., Inc. v. Westinghouse Electric Corporation, 579 So.2d 981 (La.1991).
We find that Georgia International complied with the provisions of LSA-R.S. 22:620, LSA-R.S. 22:628, and LSA-R.S. 22:654.

CONCLUSION
Georgia International was well within its rights by inserting an aviation exclusion into the policy in an effort to limit its liability, in view of Baum's record of piloting his own planes. The exclusion was clear and unambiguous and was physically attached to the policy. It was not against public policy or any statute, especially in view of the fact that aviation exclusions are expressly provided for in LSA R.S. 22:170.[1] Upon complying with these statutes, Georgia International met the notification requirements of the Insurance Code, and therefore, any non-compliance with industry standards does not render it liable in tort.

DECREE
For the foregoing reasons, we reverse and render. All costs of this appeal are assessed against appellee, Louisiana Commercial Bank.
CARTER, J., concurs with reasons.
CARTER, Judge, concurring.
I agree that the result reached by the majority is required under the particular facts and circumstances of the instant case.
In the instant case, the insured, Noel Butch Baum, was a career life insurance agent with more than thirty (30) years experience in selling life insurance. Prior to obtaining life insurance coverage with Georgia International Life Insurance Company (Georgia International), Baum unsuccessfully shopped for $1.8 million of life insurance coverage without an aviation rider. In the negotiations with representatives of Georgia International prior to the issuance of the life insurance policy for $1.1 million, there was a question of whether the company would issue the insurance on Baum's life without an aviation rider. Certainly, this series of events would have put a knowledgeable and sophisticated purchaser on notice of the need to examine the policy issued to ascertain whether an aviation rider had been issued. However, Baum failed to examine the policy issued by Georgia International and accepted the policy which included an aviation rider. Therefore, I agree that the policy of insurance issued by Georgia International excludes *1098 coverage for the loss of Baum's life resulting from the crash of a private airplane piloted by Baum.
Although I agree that this result is required in the instant case, I do not believe that the same result would necessarily follow if the insured had been an unknowledgeable and unsophisticated buyer.
NOTES
[1] LSA-R.S. 22:170 B(4) provides, in pertinent part:

B. No policy of life insurance delivered or issued for delivery in this state shall contain any provision which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a specified status, except the following provisions, or provisions which in the opinion of the commissioner of insurance are substantially the same or more favorable to policy holders:
* * * * * *
(4) As a result of aviation under conditions specified in the policy.
* * * * * *