**Rebecca Beall FIELDING and Donald Edward Beall**

v.

**MTL INSURANCE COMPANY**

No. CIV.A. 02–1836.

United States District Court, E.D. Louisiana.

May 5, 2003.

Harry Platton Pastuszek, Jr., Pastuszek & Associates, Mandeville, LA, for Plaintiffs.

R. Patrick Vance, Matthew Thomas Brown, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Defendant.

### ORDER & REASONS

FALLON, District Judge.

Before the Court is the Defendant's motion for summary judgment and the Plaintiffs' cross-motion for summary judgment. For the following reasons, the Defendant's motion for summary judgment is GRANTED IN PART as to Plaintiff Rebecca Fielding's claims and DENIED IN PART as to Plaintiff Donald Beall's claims and the Plaintiffs' cross motion for summary judgment is DENIED IN PART as to Plaintiff Rebecca Fielding's claims and GRANTED IN PART as to Plaintiff Donald Beall's claims.

### I. BACKGROUND:

This case arises out of a dispute over the value of a life insurance policy insuring Edward Beall, the father of the two Plaintiffs, Rebecca Beall Fielding and Donald Beall. As part of his estate planning, Edward Beall applied for a life insurance policy with Defendant MTL on March 27, 2000. The policy application listed Edward Beall as the primary insured and his children, Rebecca Fielding and Donald Beall, as 50% co-owners of the policy and 50% co-beneficiaries. The original face amount of the policy was $856,740. Before he submitted the application, Edward Beall told his daughter of the policy, advised her of the policy details, and asked her to sign the policy application as owner. Edward Beall also told his daughter he wanted to set up a joint bank account in the name of Rebecca Fielding and Donald Beall from which the monthly premiums on the policy would be drafted. Edward Beall planned to arrange for the amount of the premium to be transferred from one of his accounts into the newly established joint account, which would then be used to fund the automatic debit of the policy premium.

Rebecca Fielding signed the policy application as owner and Edward Beall signed as the primary insured. About the same time, Edward Beall called his son, Donald Beall, who lived in Florida, and told him he needed his social security num-

ber for the life insurance policy. Donald Beall gave his social security number, but did not pay much attention to the conversation. In his deposition, Donald Beall testified that he knew he had an interest in the policy. However, Donald Beall did not see the policy and did not sign the policy. Edward Beall then submitted the application and supporting documentation to his insurance agent and MTL issued the policy on April 27, 2000.

Shortly after the policy was issued, Edward Beall gave it to his daughter, Rebecca Fielding, to keep in her files. In the following months, Rebecca Fielding received monthly statements from her and her brother's joint account, which indicated that $5,000 was being transferred into the account and subsequently debited for payment of the monthly policy premium. Rebecca Fielding was aware of the ballpark face amount of the policy and the monthly premium payments. However, Donald Beall did not know of the joint account, nor was he aware of the face amount of the policy or the amount of the monthly premium.

In early 2001, Edward Beall spoke to his daughter about reducing the face amount of the policy because he felt he did not need as much insurance coverage to protect his estate. Edward Beall provided Rebecca Fielding with a policy change form, which she signed on February 25, 2001. The form required the signature of the owner of the policy; however, Donald Beall did not sign the policy change form. Rebecca Fielding admitted in her deposition that she understood that the purpose of the form was to reduce the face amount of the policy by half and she also understood that the premiums would be cut in half. Edward Beall then submitted the policy change form to his insurance agent, and on April 5, 2001, the agent submitted it to MTL for processing. On April 12,

2001, MTL processed the change and endorsed the change on the policy. The face amount of the policy was changed to $371,576, and the monthly premium was reduced to $2500. After the change, Rebecca Fielding continued to receive the monthly statements from the joint bank account and noticed that the premiums had dropped, understanding that this was because of the change in the policy face amount that she authorized. Donald Beall did not learn of the reduced amount of the policy and the existence of the joint bank account until approximately August of 2001, at which point Edward Beall was terminally ill with a brain tumor.

Edward Beall died on September 30, 2001. About two weeks after Edward Beall's death, Rebecca Fielding and Donald Beall completed the forms to make a claim with MTL for the proceeds of the policy. When she completed the form, Rebecca Fielding admitted in her deposition that she fully expected that MTL would pay the reduced face amount of the policy, $371,576, and did not expect to receive the higher, original face amount. The claim forms were submitted on October 12, 2002. When the proceeds of the policy were not received by the Plaintiffs within the time expected, Rebecca Fielding requested a copy of the policy documentation, and upon review of this material she realized that the policy change form that she signed indicated it must be signed by the owner of the policy. Because her brother, a co-owner, did not sign this form, the Plaintiffs then retained counsel and made demand on MTL for the original face amount of the policy, $856,740. When MTL refused to pay the original amount of the policy, Plaintiffs filed the current suit asserting breach of contract and arbitrary refusal to pay insurance benefits. Prior to filing suit, Plaintiffs Rebecca Fielding and Donald Beall tendered to MTL a check for $19,571.94 representing the difference in

premiums on the MTL insurance policy for the policy amount of $856,740 for the period April 1, 2001 to September 1, 2001; however, MTL rejected the tender.

Several months before suit was brought, MTL paid Plaintiffs $400,164.76, representing the reduced policy face amount plus interest at 8% from the date of Edward Beall's death. However, Plaintiffs maintain this suit to recover the original face amount of the policy plus interest and attorney's fees. MTL has moved for summary judgment and Plaintiffs have filed a cross motion for summary judgment.

## II. LAW & ANALYSIS:

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir.1995). "[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–22, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden of demonstrating the existence of a genuine issue is not met by "metaphysical doubt" or "unsubstantiated assertions." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The Court must "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contrary facts." *Id.* The Court does not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *See Matsushita,* 475 U.S. at 588, 106 S.Ct. 1348. Finally, "the mere existence of some factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be genuine and material." *Willis,* 61 F.3d at 315. If the evidence leads to only one reasonable conclusion, summary judgment is proper. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The facts as recited above are undisputed. This case is brought pursuant to the diversity jurisdiction of this Court. This Court is, therefore, bound to apply substantive law of Louisiana. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The precise issue before this Court is one of first impression under Louisiana law. Thus, the Court must make an *Erie* guess based on the present state of Louisiana law. This Court must decide whether one co-owner of a life insurance policy may change the face amount of the policy without the other co-owner's knowledge or consent, thereby reducing the value of the policy as to the other co-owner.

Defendants rely on a Louisiana state court decision, *Allianz Life Ins. Co. of North America v. Oates,* 756 So.2d 677 (2000), the only case that addresses co-

ownership of a life insurance policy. In *Allianz*, a husband and wife co-owned a life insurance policy insuring the husband as a result of a community property settlement. Originally, the first wife was named as the beneficiary on the policy. After the divorce, the husband remarried and subsequently changed the beneficiary to be his new wife. When the husband died, the first wife contacted the insurer, claiming that the beneficiary had been changed without her knowledge or consent, in violation of her property settlement. The first wife claimed she was entitled to the policy proceeds, or at least her share of them, because she was a co-owner of the policy pursuant to the community property settlement. The new wife also made a claim for the proceeds as the named beneficiary, which prompted the insurer to deposit the proceeds into the registry of the court and institute a concursus proceeding.

The court held that the husband's designation of his new wife as beneficiary was valid and entitled her to payment of the policy proceeds upon his death. *Id.* at 679. In its reasoning, the Court stated the following as one of the reasons for its decision:

> Moreover, La. C.C. art. 802 states that as against third persons to a co-ownership, such as [the insurer] in this case, 'a co-owner has the right to use and enjoy the thing as if he were the sole owner.' Since designating beneficiaries is an incident of ownership, [the husband] simply was exercising that right when he designated [his new wife] as beneficiary. To the extent that [the first wife] shared the same right as co-owner, she chose not to do so.

The Court also noted that the first wife's remedy, if any, was properly against the husband's estate and did not entail nullifying an otherwise binding insurance contract. *Id.*

The Defendant cites this language of the case to support its proposition that one co-owner may change the terms of a policy without the consent of the other co-owner under Louisiana Civil Code article 802. Accordingly, Defendant contends that in this case, Rebecca Fielding validly changed the face value of the policy by properly exercising one of her rights incident to her ownership, and this change is binding despite the fact that Donald Beall did not consent to it.

With regard to the *Allianz* case, Plaintiffs contend that the case is distinguishable from this case and does not stand for the general proposition Defendant asserts. First, the Plaintiffs explain that the analysis in the *Allianz* case is founded on the application of community property partition law, which is misplaced here. It is Plaintiffs' position that the *Allianz* case should be limited to situations involving community property partitions and not issues relating to the ownership of an insurance policy and the obligations of an insurer to an owner of the policy. Plaintiffs note that the litigants in the *Allianz* case, were not, as here, insurance policy owners versus the insurance company but the former and surviving spouse of the sole owner of the policy with the issue being who was the beneficiary under the policy. Further, the Plaintiffs explain that unlike *Allianz*, where "[the insurer] was never placed on notice as to [the first wife's] co-ownership interest in the policy," MTL was fully aware of Donald Beall's ownership of the policy from the inception of the policy.

This Court agrees with the Plaintiffs that the *Allianz* case is distinguishable from the present case on several grounds and cannot apply to the facts of this case. The *Allianz* court gives several reasons for its decision including the application of community property law, the fact that the

first wife (co-owner) had no right under the terms of the policy to change the beneficiary, the insurer's lack of notice of the first wife's ownership interest, and the co-ownership rule of Civil Code article 802. Because of the many reasons for the holding, this Court finds that it is inappropriate to isolate the application of article 802 and apply it to a case involving materially different facts. In the present case, community property law is not implicated in any way, Donald Beall does have rights under the terms of the policy as an owner, and the Defendant was aware of Donald Beall's co-ownership interest in the policy. Donald Beall was listed on the policy application as an owner of 50% of the policy, and the insurance company accepted the policy application and issued the policy with him listed as owner despite the fact that he did not sign the application. Because of the material factual differences present in this case, the *Allianz* case is distinguishable and does not apply.

■ In the absence of any authority on this issue, this Court is left to apply general principles of law to determine the effect of Rebecca Fielding signing a policy change form without her brother's knowledge or consent. Clearly, the co-ownership articles of the Louisiana Civil Code must govern this situation because the life insurance policy is co-owned 50% by Rebecca Fielding and 50% by Donald Beall. Defendant takes the position that Donald Beall is not even a co-owner, because he never signed the policy or accepted it in any way. Defendant cites *Louisiana Commercial Bank v. Georgia Int'l. Life Ins. Co.*, 618 So.2d 1091, 1095 (1993), for the proposition that an insurance contract is an offer and requires acceptance. According to Defendant, because Donald Beall never signed the policy as owner, he never accepted the offer.

The Court disagrees and finds that Donald Beall is an owner of 50% of the policy. He is listed on the insurance application as owner of 50% and the insurance company issued the policy accepting the application listing him as owner, despite the fact that Donald Beall did not sign the application as his sister did. The Defendant cannot now hide behind its oversight by arguing the Donald Beall never accepted the offer of the contract. The Defendant has failed to point to any term or provision stating that a listed owner is not an owner if he does not also sign the policy application. Rather, the simple fact is that Donald Beall is listed as an owner of 50% of the policy, in addition to being listed as a 50% beneficiary, and the insurance policy itself provides that "this policy and the written application, a copy of which is attached and made a part of this policy when issued, constitute the entire contract." The case relied on by the Defendant supports this finding, as the court in that case explained that "the law is well settled that an application for insurance merely constitutes a contractual offer, and the insurance contract is not completed until the application is accepted by the insurer." *Louisiana Commercial Bank*, 618 So.2d at 1095. Applying this rule to the case, the Defendant insurance company accepted the offer or application for insurance designating Donald Beall as 50% owner, without requiring his signature, and cannot now assert that Donald Beall is not an owner when it accepted and issued the policy based on the offer or application including that designation. Therefore, Donald Beall is an owner of 50% of the insurance policy pursuant to the terms of that contract.

■ Having established that Rebecca Fielding and Donald Beall each own 50% of the insurance contract, this Court must resolve the effect of Rebecca Fielding's act of reducing the face value of the policy

without the knowledge or consent of Donald Beall, her co-owner. Applying general principles of contract interpretation, it is evident to this Court that the policy change form executed by Rebecca Fielding was not a valid amendment to the policy because the form required the signature of the owner of the policy and the change form was signed by only one of the policy owners when the insurance company knew that two owners were listed on the policy. In contrast to the original application for the life insurance policy, the policy change form, which consisted of two pages (Side A and Side B), explicitly stated the following: Who must sign Side A: (1) the owner .... " Therefore, because the policy listed two owners and only one owner signed the policy change form, the change form was not a valid amendment to the policy. Consequently, the value of the policy remains at the original face value of $856,740."

■ However, the Court finds that the principle of waiver is applicable in this case against the Plaintiff Rebecca Fielding, precluding her from claiming her share of the full $856,740. "Waiver is generally understood to be the intentional relinquishment of a known right, power or privilege." *Steptore v. Masco Construction Co., Inc.*, 643 So.2d 1213, 1216 (La. 1994) (citations omitted). "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Id.* The *Stepmore* case and the several others that deal with the issue of waiver in the insurance context concern waiver by an insurer to a defense of non-coverage based on an insurer's knowing and voluntary acts notwithstanding the defense. For example, in *Stepmore* the court held that an insurer's right to assert a defense was waived by

assumption and continuation of defense of the insured in the face of facts indicating a right to deny coverage. Even though the *Stepmore* case and others deal with an insurer's waiver of a defense, the concept of waiver has not been limited to defenses of insurers and this Court sees no reasons why waiver cannot apply to claims by insureds or other parties to the insurance contract.

In this case, as a listed owner of the policy, Rebecca Fielding executed a policy change form knowingly with the intent to reduce the value of the policy from $856,740 to $371,576. She testified in her deposition that she understood that she was reducing the value of the policy and would have a lower monthly premium. In fact, when she made the insurance claim after her father's death, she admitted that she only expected to receive 50% of the reduced amount of the policy. Based on these facts, the Court finds that she knew of her right under the policy and actually intended to relinquish her right to the original value of the policy in exchange for a reduced premium. Therefore, Rebecca Fielding waived her right to 50% of the $856,740 and is entitled to no relief in this suit, because she has already been paid her share of the reduced value of $371,576.

With respect to Plaintiff Donald Beall, the waiver concept does not apply because the evidence in this case shows that he had no knowledge of the change in the value of the policy when it was made and did not consent or join in the request for a change in the amount of the policy. Therefore, he could not knowingly and intentionally give up or relinquish his right to 50% of the original face value of $856,740. However, this does not end the analysis of what Donald Beall is entitled to recover from Defendant. Although Donald Beall may enforce the policy for the original face value of $856,740 as to his 50%, his recov-

ery will be reduced based on unjust enrichment. Under Louisiana law, "a person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ.Code art. 2298 (1995). The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.

 In the present case, Donald Beall will be unjustly enriched if he is allowed to receive his share of the benefits of a policy valued at $856,740, because he did not make the premium payments for this policy amount during the entire course of the policy. As explained earlier, when Rebecca Fielding executed the policy change form, the Defendant reduced the value of the policy and the monthly premium payments accordingly. The premiums were paid from a joint account of Rebecca Fielding and Donald Beall, and for a period of six months, only approximately $2500 a month was paid in premiums rather than approximately $5,000. Therefore, based on the theory of unjust enrichment, Plaintiff Donald Beall's recovery is reduced by the difference in the amount of premiums that he did not pay during the six months after the policy change, that is $2500 for six months, totaling $15,000. In addition, Donald Beall's recovery must be reduced by the amount of his portion of the policy that Defendant already paid to him.

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is GRANTED IN PART as to Plaintiff Rebecca Fielding's claims and DENIED IN PART as to Plaintiff Donald Beall's claims and the Plaintiffs' cross motion for summary judgment is DENIED IN PART as to Plaintiff Rebecca Fielding's claims and GRANTED in part as to Plaintiff Donald Beall's claims. Accordingly, Plaintiff Re-

becca Fielding's claims against Defendant are hereby DISMISSED WITH PREJUDICE and a judgment will be entered in favor of Plaintiff Donald Beall against Defendant.