IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
NO. 92-2361

ROBERT E. WILLIS,

                                        Plaintiff-Appellant,

        versus

ROCHE BIOMEDICAL LABORATORIES, INC.,
E.I. DU PONT DE NEMOURS & COMPANY,
GEORGE M. ALLISON, M.D., BILL PACE,
BILL BRINGHURST, MARTHA KIVLOVITZ,
                                        Defendants,

ROCHE BIOMEDICAL LABORATORIES, INC.,
                                        Defendant-Appellee.
_____

Appeal from the United States District Court
for the Southern District of Texas
_____
August 2, 1995

Before KING, JOLLY and PARKER[1], Circuit Judges.

ROBERT M. PARKER, Circuit Judge:


     The original panel opinion in this cause, *Willis v. Roche
Biomedical Laboratories, Inc.*, 21 F.3d 1368 (5th Cir. 1994), is
withdrawn and this opinion is substituted in its stead.

     Robert E. Willis ("Willis") filed this action in Texas state
court on July 31, 1991, asserting negligence and defamation claims
arising out of a test of Willis's urine that resulted in a false
positive for methamphetamines.  Willis brought action against Roche
Biomedical Laboratories, Inc. ("Roche"), the laboratory that
performed the urinalysis; E.I. du Pont de Nemours & Company ("Du

_____

     [1]  Judge Parker was the Chief Judge of the Eastern District
of Texas, sitting by designation at the time this case was
submitted.

Pont"), his employer; and four Du Pont employees, George M. Allison, M.D., Bill Pace, Bill Bringhurst and Martha Kivlovitz. (The Du Pont company and its employees are referred to collectively as "the Du Pont defendants" or "Du Pont".)

On August 22, 1991, the Du Pont defendants, joined by Roche, removed the action to federal court on the ground that Willis's claim arose under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The district court subsequently granted the Du Pont defendants' motion to dismiss because Willis had failed to exhaust his contractual remedies. Although Willis appealed from the order of dismissal, that appeal has been previously dismissed and is not now before this Court.

On June 29, 1992, the district court granted Roche's motion for summary judgment and this appeal followed.

## I. FACTS

The district court found that the following facts were established by the summary judgment evidence. Neither party disputes that this portion of the district court's opinion is correct.

Plaintiff-Appellant Willis has been employed by Du Pont at its LaPorte, Texas chemical plant since March 26, 1979 as a utility helper. At all times relevant to this lawsuit, his employment was governed by a collective bargaining agreement, which included a substance abuse policy covering La Port plant employees. In July 1990, Du Pont, in alliance with the Union, instituted a random drug testing policy.

2

Du Pont contracted with Roche to conduct the screening and testing of urine samples provided by Du Pont in accordance with strict protocol procedures in the contract.

On August 2, 1990, Du Pont ordered that Willis participate in a random drug test, in accordance with its substance abuse policy. The test was performed by Roche and a report was issued to Du Pont, pursuant to a consent form signed by Willis. The report indicated that Willis had tested positive for methamphetamine use. Willis remained employed at Du Pont and continued to receive his regular salary after Du Pont received Roche's report. Willis was placed on restricted work duty and was sent to a physician. Willis was also required to attend counseling sessions and to submit to follow up testing.

On November 2, 1990, Roche informed Du Pont that Willis's drug test had registered a "false positive." The false positive was the result of the test confusing the presence of over the counter cold medication with the presence of illegal methamphetamine in Willis's urine. Upon learning of the mistake, Du Pont compensated Willis for lost time and for medical expenses.

Willis brought suit for negligence, gross negligence, libel and slander, contending that his damages included various aspects of mental suffering and the loss of his good name and reputation. He also claimed monetary damages, but acknowledged that Du Pont had made monetary amends with regard to the payment of these sums in the form of repayment for lost work time and reimbursement for medical expenses.

3

## II. GOVERNING LAW

In its order denying Willis's motion to remand the case to state court, the district court found that Willis's state law claims were preempted by § 185 of the LMRA. If that is correct, the questions before us are governed by substantive federal law. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (substantive federal law applies to suits on collective bargaining agreements covered by this section [§ 185].) However, the court applied state law to the claims in its memorandum opinion granting Roche summary judgment.

We hold that Willis's claims against Roche are not preempted by the LMRA, because they do not require an interpretation of the collective bargaining agreement for resolution. Rather, the district court had pendant jurisdiction over these state claims, and it appropriately applied Texas law.

## III. STANDARD OF REVIEW

Willis challenges the district court's interpretation of Texas law and its determination that no genuine issue of material fact existed in the summary judgment record. We must review *de novo* the district court's determination of state law. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 1225 (1991) ("The obligation of responsible appellate review and the principle of a cooperative judicial federalism underlying *Erie [R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)] require that courts of appeals review the state-law determination of district courts *de novo.*")

The standard of review at the appellate level of a district court's grant of summary judgment requires the same analysis as employed by the trial court. FED. R. CIV. P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has held that Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment must initially demonstrate the absence of a genuine issue of material fact. *Id.*, 477 U.S at 323, 106 S.Ct. at 2553. If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id*. 477 U.S. at 325, 106 S.Ct. at 2553-54. "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations and citations omitted). However, when the parties have submitted evidence of contradictory facts, "the evidence of the non-movant is to be believed, and all justifiable

5

inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

This standard provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*. First, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will preclude summary judgment. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Second, a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

## IV. ANALYSIS

We now turn to the question of whether the district court erred in granting Roche's motion for summary judgment in this particular case.

A.  WILLIS'S NEGLIGENCE CLAIM

To recover under a negligence cause of action, Willis must establish that Roche owed a legal duty to him, and then, that Roche breached the duty and that Willis suffered damages proximately caused by the breach. *See, e.g., Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex. 1983). The district court held that Roche owed no legal duty to Willis under Texas law to use reasonable care in its administration of the drug testing of Willis's urine sample. The district court found that Texas law was

6

not sufficiently developed on the issue of a laboratory's liability for negligent drug testing for a federal court to make an "*Erie* prediction", and thus the court was forced to rely on the law of negligence as it applies to physicians employed as independent contractors. With the benefit of a recent pronouncement from the Supreme Court of Texas, we now make the necessary *Erie* prediction. *Smithkline Beecham Corp. v. Doe*, No. D-4131, slip op. (Tex. July 21, 1995).

In *Smithkline*, an employer rescinded a job offer because a pre-employment drug test revealed the presence of opiates in the plaintiff's urine. The plaintiff contended that the test result was caused by consumption of poppy seed muffins and not by use of any controlled substances. The employer informed Doe that her only recourse was to reapply for employment with the company in six months. She did and the company declined her re-application.

Doe sued, among others, the laboratory which conducted the testing, claiming that the laboratory owed her a duty to warn that poppy seeds could cause a positive test result. Reversing a court of appeals decision, the Supreme Court of Texas held that this duty did not exist. *Smithkline*, slip op. at 2. The court recognized that Smithkline Beecham was an independent laboratory hired by the employer to conduct drug screening tests. The court did not consider the duties Smithkline Beecham owed the employer or the duties the employer may have owed Doe. Rather, the court focussed "exclusively on the relationship between the laboratory and the person tested." *Smithkline*, slip op. at 8.

The Texas high court noted that some jurisdictions had held that a laboratory owes a duty to persons tested to perform its services with reasonable care. Although distinguishing those decisions from the failure to warn claims before it, the court pointed out that whether an independent laboratory owes a duty of reasonable care is a question on which "[n]o court of last resort has spoken." *Smithkline*, slip op. at 9. In addition, the court seemed to question the soundness of the decisions finding such a duty.[2] Reviewing decisions in a related context, the Texas court also noted that "the only court of last resort in any American jurisdiction to clearly consider the issue has held that no tort duty to use reasonable care should be imposed on polygraph test operators." *Smithkline*, slip op. at 10 (citing *Hall v. United Parcel Serv. of Am.*, 555 N.E.2d 273, 276-78 (N.Y. 1990)).

Although the Supreme Court of Texas emphasized in *Smithkline* that it was not considering whether a drug testing laboratory has a duty to use reasonable care in performing tests and reporting results, we must consider what the court did say in determining what Texas law is. Recognizing the risks inherent in making an *Erie* "guess", we find that under current Texas law, Roche owed Willis no duty of reasonable care in testing his urine for drugs.

---

[2]. In particular, the court questioned this Court's earlier opinion in the present case. *Smithkline*, slip op. at 9-10. We do not agree that our earlier reliance on the Texas Court of Appeals decision in *Smithkline* was unfounded. However, the Texas Supreme Court's unfavorable references necessarily affect our *Erie* analysis since we must predict what that court would have done if presented with the same dispute.

8

B.  WILLIS'S DEFAMATION CLAIM

Second, Willis seeks damages arising from the publication of the false positive test results.  Roche responds that Willis signed a consent form granting permission to release the results of such tests to the company.  The pertinent consent form language reads, "I furthermore give (outside laboratory) my permission to release the results of such tests to the company."  (Record Vol.1., p. 252).  However, we need not address whether this release was effective because we agree with the district court's reasoning that in any event Roche's communication was qualifiedly privileged.

The district court assumed *arguendo*, without holding, that there was no valid consent and that the report was defamatory, but found that Roche's publication was qualifiedly privileged, citing *Boze v. Branstetter*, 912 F.2d 801, 806 (5th Cir. 1990).  The opinion reasons:

> The privilege advances "the need for free communication of information to protect business and personal interests." *Gaines v. CUNA Mut. Ins. Soc'y*, 681 F.2d 982, 986 (5th Cir. 1982).  In order for the moving party to prevail on a summary judgment asserting this privilege, however, an absence of malice must be shown. *Houston v. Grocers Supply Co., Inc.*, 625 S.W.2d at 801.
> The only manifestation of malice established by plaintiff stems from the very fact that the test results were false.  The law is clear, "'[m]alice is not implied or presumed from the mere fact of the publication, nor may it be inferred alone from the character or vehemence of the language used, nor found from the falsity of the statement alone.'" *Houston Belt & Terminal Ry. Co. v. Wherry*, 548 S.W.2d at 754 (citations omitted). Plaintiff has failed to demonstrate express malice or implied malice. (Record Vol. 1., p. 424)

Willis does not directly challenge this holding, but it is not entirely clear that he has abandoned his defamation claim.  We

nonetheless agree with the reasoning and conclusion reached by the district court and hold that it was correct in granting Roche summary judgment on the defamation claim.

## V. CONCLUSION

The district court's order granting summary judgment in favor of Roche is AFFIRMED.