**Rosemarie A. STONE, et al.**

v.

**La QUINTA INNS, INC.**

**Civil Action No. 94–3717.**

United States District Court,
E.D. Louisiana.

Oct. 7, 1996.

---

Clarence O. Dupuy, Jr., Gregory A. Dupuy, Dupuy & Dupuy, Metairie, LA, for Rosemarie A. Stone, Andrew W. Stone.

James Anthony Babst, Desha D. Dardenne, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, for La Quinta Inns, Inc.

## ORDER AND REASONS

FALLON, District Judge.

Before the Court is a motion for summary judgment filed by the defendant, La Quinta Inns, Inc ("La Quinta"). For the reasons that follow, the motion is DENIED.

**BACKGROUND:** Rosemarie and Andrew Stone were hired by La Quinta and began training as a husband/wife inn manager team in June 1994. They were fired less than two weeks into the training and orientation program. The plaintiffs bring this action under the American with Disabilities Act ("ADA"), alleging that La Quinta fired Andrew Stone because of his vision impairment and fired Rosemarie Stone in retaliation for her actions in support of her husband's efforts to obtain a reasonable accommodation (emulation software to enlarge the font on the front-desk computer screen) for his disability.

**ANALYSIS:** Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial." *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir.1995). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* The Court must "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

The defendant seeks dismissal of the plaintiffs' claims on several grounds: 1) that Andrew Stone's vision impairment does not constitute a "disability;" 2) that Andrew Stone is not a "qualified individual;" 3) that the plaintiffs can produce no evidence that La Quinta's proffered reason for discharging Andrew Stone (i.e., insubordination) is a pretext for discrimination; and 4) that Rosemarie Stone fails to establish a prima facie case of retaliation. Alternatively, La Quinta seeks summary judgment: 1) declaring that plaintiffs are not entitled to compensatory or punitive damages under 42 U.S.C. § 1981a; and 2) barring the plaintiffs from recovering front pay damages or reinstatement and cutting off backpay damages on February 21, 1995 pursuant to the after-acquired evidence rule.

**A. *Whether Stone's Vision Impairment Constitutes a Disability:*** The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual." 42 U.S.C. § 12102(2)(A). In addition, an individual is considered to have a disability if he has a record of or is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2)(B) and (C). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An impairment is considered to

"substantially limit" a major life activity if it "significantly restrict[s] ... the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Where the major life activity at issue is working, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. 1630.2(j)(3)(ii).[1]

In opposition, plaintiffs submit Mr. Stone's affidavit, in which he states that he suffers from a vision impairment known as low vision, which is complicated by low tension glaucoma or demyelinating disease. His vision is 20/400 without correction, and he is registered with the New York Commission for the Blind and Visually Impaired as legally blind. He states that glasses do not help him to read a computer screen. La Quinta does not contest this evidence. Nevertheless, La Quinta argues that Mr. Stone's vision impairment cannot be a "disability" under the ADA because he has testified in deposition testimony that his corrected vision "is approximately 20/200." *See* Defendant's Exhibit B at p. 14.

La Quinta bases this argument on *Collier v. City of Dallas*, No. 86–1010, 798 F.2d 1410 (5th Cir. Aug. 19, 1986) (unpublished). Because La Quinta failed to attach a copy of this unpublished opinion to its memorandum, all that this Court knows about *Collier* is that in that case the Fifth Circuit "held that a person is not handicapped if his vision can be corrected to 20/200." *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993). This Court does not have the benefit of the *Collier* court's reasoning. It is not even apparent which of the major life activities was at issue in *Collier*, which was presum-

ably decided under the Rehabilitation Act of 1973, not the ADA. If the major life activity was working, then the *Collier* holding might or might not be applicable here, depending upon what type of job was at issue in that case.

Nevertheless, even if this Court were privy to the facts presented in *Collier*, this Court would not grant summary judgment on this issue, for the deposition testimony relied upon by La Quinta indicates that Stone's corrected vision "is *approximately* 20/200." If his corrected vision is 20/201, as opposed to 20/199, then the per se rule of law that the defendant gleans from *Collier* would not apply. Accordingly, the Court finds that Mr. Stone's affidavit establishes a genuine issue as to whether Andrew Stone's vision impairment significantly restricts his ability to see (as compared to an average person in the general population) or to perform work (as compared to an average person with comparable training, skills, and abilities) so as to amount to a "disability" within the meaning of the ADA. In addition, the Court finds sufficient indication in the deposition testimony of various La Quinta personnel to support a reasonable inference that Stone was regarded by La Quinta as having a disability. Thus, La Quinta is not entitled to summary judgment on this issue.

**B. Whether Andrew Stone is a "Qualified Individual":** Next, La Quinta argues that even if Stone's vision impairment does amount to a disability, he is nevertheless barred from ADA protection because he is not a "qualified individual with a disability." In order to satisfy this requirement, the plaintiff must show that "with or without reasonable accommodation, [he] can perform the essential functions of [the inn manager] position." 29 C.F.R. § 1630.2(m). La Quinta does not challenge Stone's ability to perform computer work.[2] Rather, the defendant maintains that Stone's performance was lacking in virtually all other functions of the

---

1. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(ii).

2. Stone has a bachelor of arts degree from Dartmouth College and an MBA from Stanford University. He has thirty years of experience with computer systems, including positions with American Airlines, Xerox Corporation, and Citicorp, N.A.

inn manager position: housekeeping, maintenance, laundry, guest checkout, hotel security, and operating the hotel telephone system (transferring calls, programming wake-up calls, and activating message indicator lights). In opposition, however, both Andrew and Rosemarie Stone submit affidavits in which they state that Joe and Diane Martin (the couple responsible for training the Stones during Phase I of the training program) complimented the Stones on their performance during training and told the Stones that they would recommend to corporate headquarters that the Stones progress to Phase II training. The Court finds this sufficient to establish genuine issue as to whether Andrew Stone was able to perform the essential functions of the inn manager position.

**C.  Whether the Plaintiffs Can Produce Evidence of Pretext**: If an ADA plaintiff has no direct evidence of discrimination, then he must prove his claim through the indirect *McDonnell Douglas* method, by showing: "(1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action; and (4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Taylor v. Principal Fin'l Group, Inc.*, 93 F.3d 155, 162 (5th Cir.1996) (quoting *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995)). "Once the plaintiff has stated a prima facie case, the defendant must 'articulate some legitimate nondiscriminatory reason' for its action that adversely affected the employee."[3] *Daigle*, 70 F.3d at 396

(quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). If the employer meets this burden, then the plaintiff must show that the proffered reason is pretextual. *Id.* at 397.

Here, La Quinta maintains that Andrew Stone was discharged for insubordination. Specifically, La. Quinta asserts that Stone was fired because he refused to leave his room and resume his extended training schedule. In opposition to summary judgment, the plaintiffs submit the Stones' affidavits, which state that Mr. Stone was in his room because he had obtained permission from the Martins to make telephone inquiries regarding the emulation software that he needed to read the computer screen. The Court finds that this evidence establishes genuine issue as to whether the reason proffered by La Quinta for Stone's discharge (*i.e.*, insubordination) was what actually motivated La Quinta's decision and supports a reasonable inference that Stone's vision impairment was a determinative factor in that decision.

**D.  Whether Rosemarie Stone Has Established a Prima Facie Case of Retaliation**: To make out a case of retaliation under the ADA, a plaintiff must establish: (1) that she engaged in activity protected by the ADA; (2) that an adverse employment action occurred; and (3) that a causal connection existed between the protected activity and the adverse action. *Washington v. HCA Health Serv. of Texas,*

---

**3.** In a supplemental memorandum, La Quinta argues that the Supreme Court, in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513–17, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993), rejected the proposition "that an employer must come forward with some explanation for the refusal to hire an applicant where the decision maker is of the same protected class as the applicant." *See* Defendant's Supplemental Memorandum at 2. La Quinta argues that it is unnecessary for La Quinta to explain its decision to terminate Stone because Karen Joy Rebholz, La Quinta's Director of Training, has a left arm that is significantly smaller than her right. This argument is without merit. Even if this Court were to assume that Ms. Rebholz is an "individual with a disability" and that she was the sole decision maker with regard to Stone's discharge,

the rule of law suggested by La Quinta simply cannot be extracted from the *dicta* in *St. Mary's*. In the portion of that opinion relied upon by La Quinta, the Court is attacking the dissent's opinion that where a jury rejects an employer's proffered reason it must assess damages regardless of whether it believes that the employer is guilty of race discrimination—even in an extreme case, such as where the hiring officer is of the same minority group as the plaintiff and the employer's work force contains a disproportionately large number of employees from that minority group. The Court did not hold, as La Quinta suggests, that a plaintiff, as a matter of law, can never make out a prima facie case of discrimination if the decision maker is a member of the same protected class as the plaintiff.

*Inc.*, 906 F.Supp. 386, 393 (S.D.Tex.1995). La Quinta argues that Mrs. Stone fails to make out her prima facie case because, even if she did engage in protected activity, she cannot establish a causal connection between the activity and her termination. According to La Quinta, Mrs. Stone was fired automatically upon the discharge of Mr. Stone because La Quinta hired them as a team. Although Mrs. Stone has not presented strong evidence of a causal relationship, the Court finds that her deposition testimony, particularly that regarding the day of the Stones' discharge, creates a genuine issue as to whether any protected activity engaged in by Mrs. Stone was a determinative factor in La Quinta's decision to fire her.

■ **E.** *Relief Under Section 1981a*: La Quinta argues that, pursuant to 42 U.S.C. § 1981a(a)(3), the plaintiffs are not entitled to recover compensatory damages because La Quinta made good faith efforts to identify and provide reasonable accommodation to Stone. *See* 42 U.S.C. § 1981a(a)(3). However, Andrew Stone's affidavit regarding conversations with La Quinta management personnel about the emulation software is sufficient to create a genuine issue as to this fact.

■ In addition, La Quinta argues that plaintiffs are not entitled to recover punitive damages because the plaintiffs cannot produce any evidence that La Quinta acted "with malice or with reckless indifference" to the Stones' rights under the ADA. 42 U.S.C. § 1981a(b)(1). The Court disagrees and finds that the plaintiffs' deposition testimony and affidavits establish a genuine issue as to this fact. Both of the plaintiffs' state in their respective affidavits that, prior to the meeting with management personnel regarding the emulation software, the Martins had given the plaintiffs positive evaluations. Although far from overwhelming evidence of malice, this supports a reasonable inference

that the defendant's complaints regarding Andrew Stone's performance, made after the reasonable accommodation meeting, were made with the intent to disguise a discriminatory motive. Thus, a reasonable jury could find that La Quinta acted with malice or reckless indifference to the Stones' rights under the ADA.

■ **F.** *After–Acquired Evidence*: Finally, La Quinta argues that, under the after-acquired evidence rule enunciated in *McKennon v. Nashville Banner Publishing Co.*, —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the plaintiffs are barred from recovering front-pay damages or reinstatement and from receiving backpay damages beyond February 21, 1995. La Quinta maintains that, if it had known that the Stones were not married until May 20, 1994, it would have terminated the Stones for that reason alone.

In *McKennon*, the Court held that "where there is after-acquired evidence of wrongdoing that would have led to termination on legitimate grounds had the employer known about it," such evidence does not bar all relief for unlawful discrimination but is relevant in determining the appropriate remedial action. *Id.* at ——, 115 S.Ct. at 886.[4] Although the Court recognized that "the factual permutations and the equitable considerations ... will vary from case to case," it held that "as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy" and that "[t]he beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered."[5] *Id.*

■ "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge." *Id.* at ——

---

4. Although *McKennon* was decided under the Age Discrimination in Employment Act ("ADEA"), the Court agrees that its rationale is equally applicable in the ADA context.

5. After-acquired evidence can effect the plaintiff's remedy "even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." *McKennon*, —— U.S. at ——, 115 S.Ct. at 886.

——, 115 S.Ct. at 886–87. Under *McKennon*, "the pertinent inquiry, except in refusal-to-hire cases, is whether the employee would have been fired upon discovery of the wrongdoing, not whether he would have been hired in the first instance." *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1108 (5th Cir. 1995).

La Quinta offers the testimony of Diane Martin, inn manager for La Quinta, who states that lying on an application is grounds for termination. The Stones submitted their application to La Quinta on March 9, 1994. They do not deny that they were not formally married until May 20, 1994, just two weeks prior to reporting for training at La Quinta. However, the applications do not ask for marital status, and the Stones did not expressly state that they were married. The defendant maintains that the Stones nevertheless misrepresented their marital status because they submitted the applications in response to an advertisement that solicited spouses. In addition, Rosemarie used Andrew's surname in her application. The Stones' response to this assertion is that they were engaged to be married at the time, with the wedding set for May 20, 1994, and had long considered themselves to be common law spouses. In addition, the plaintiffs submit deposition testimony of Tom Higgins, who indicates that La Quinta does allow unmarried man/women couples to qualify as inn manager teams. Thus, the Court finds that a genuine issue exists as to 1) whether the Stones in fact did misrepresent their marital status; and 2) whether La Quinta, if it had known that the Stones were not married at the time they submitted their applications, would have terminated the Stones for that reason alone.

Accordingly, IT IS ORDERED that La Quinta's Motion for Summary Judgment is HEREBY DENIED in all respects.