IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-31155
SUMMARY CALENDAR

_____

TONY BAROUSSE; LARRY GILBERT; TONY CHAUVIN; GLENN BOURGEOIS; LLOYD
LAGARDE, SR; PAUL GISCLAIR, JR; HENRY WILLIAMS; AUDY BERKE; PAUL
PEYTON; EDWIN VERDIN; SILVIA ZELAYA; RANDY SHELBY; DAVID MANSHACK;
RICHARD WALKER, SR; JAMES LAFOREST, III; MICHAEL BOUDREAUX; GREGORY
WILSON, SR; KENNETH PREVOST; LEONARDO BRETOS, JR; JAMES FOX, JR; KEVIN
DUFRENE; ROBERT JOHNSON; JOHN LAWSON, III; CLARENCE BATES; TERRY
SABIO; NATHANIEL BUTLER; DALTON CANTRELLE

Plaintiffs - Appellees - Cross-Appellants

v.

PAPER, ALLIED-INDUSTRIAL, CHEMICAL & ENERGY WORKERS INTERNATIONAL
UNION; ET AL

Defendants

PAPER, ALLIED-INDUSTRIAL, CHEMICAL & ENERGY WORKERS INTERNATIONAL
UNION; PAPER, ALLIED-INDUSTRIAL, CHEMICAL & ENERGY WORKERS
INTERNATIONAL UNION, Local Union Number 4-447

Defendants - Appellants - Cross-Appellees

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(99-CV-2600-L)

_____

July 10, 2001

Before REYNALDO G. GARZA, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[1]

This suit is brought under the National Labor Relations Act, 29 U.S.C. § 151, et seq. Plaintiffs are employees at the Westwego, Louisiana plant of the National Gypsum Company and the defendant is their Union. The Union represented them as a class in a dispute that arose over the terms of a collective bargaining agreement between the union and National Gypsum Company. The dispute was over a mandatory "day off" program National Gypsum Company instituted. The parties agreed to participate in binding arbitration. The arbitration resulted in an award of compensatory and punitive damages, attorney's fees, costs and interest. The district court and this Court affirmed the award. The issue presently before the court is the proper distribution of the punitive damages portion of that award.

The district court entertained defendant's motion for summary judgment and plaintiffs' cross-motion for summary judgment. It granted plaintiff's motion for summary judgment. Having read the briefs and reviewed the record, we AFFIRM the decision of the district court based on its memorandum opinion which is attached hereto as Appendix A.

---

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**TONY BAROUSSE, ET AL**            **CIVIL ACTION**

**VERSUS**                                            **NO. 99-2600**

**PAPER, ALLIED-INDUSTRIAL, ET AL.**      **SECTION "L" (2)**

**ORDER & REASONS**

Before the Court is the motion of defendant Paper, Allied-Industrial, Chemical & Energy Workers International Union, and its affiliated Local Union No. 4-447 (collectively the "Union") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Also before the Court is the cross motion of plaintiff Tony Barousse and 26 other named employees of National Gypsum Company (the "Employees") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion for summary judgment is DENIED and plaintiffs' cross motion for summary judgement is GRANTED. The case is remanded to the arbitrator originally assigned to the case by the parties for final resolution on the issue of proper distribution of the punitive damage award.

**I. BACKGROUND**

In this suit brought under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, et seq., plaintiffs are employees at the Westwego, Louisiana plant of National Gypsum Company (the "Company"). They allege that the defendant Union represented them as a class in a dispute that arose in 1994 over the terms of a collective bargaining agreement between the Union and the Company. The dispute involved a mandatory "day off" program that the Company instituted.

The parties agreed to participate in binding arbitration, and chose to bifurcate the issues of liability and damages. In 1996 the arbitrator found that the Company violated the collective bargaining agreement and in 1997 the arbitrator ordered the Company to pay compensatory and punitive damages, attorney's fees, costs and interest. The district court and the U.S. Fifth Circuit Court of Appeals affirmed. The issue presently before this Court is the proper distribution of the punitive damage portion of the award. A review of the facts is necessary in order to decide this issue.

At a general union meeting on August 22, 1998 the issue of the distribution of the punitive damage award was first discussed, but left unresolved. The issue was again discussed without resolution on September 23, 1998 at another general membership meeting. At this latter meeting, the executive union board stated their belief that the punitive award was awarded in favor of the Union and not the individually-affected members. The affected members in attendance expressed a different view and requested a clarification. On September 25, 1998, the Union distributed to each affected union member a check for back pay from only the compensatory damage award. Thereafter, debate and disagreement over the rightful recipient of the punitive award was heightened. On April 8, 1999 the Union wrote a letter to the arbitrator requesting clarification of the award. On April 16, 1999 the arbitrator responded, addressing the distribution of the punitive damage award stating in essence that $90,000.00 should go to the affected membership in further compensation of their wage loss, and $10,000.00 should go to the Union for its admirable prosecution of the case. He added that if there was any surplus remaining after the employees have been made whole, the remainder should go to the Union. On June 23, 1999, in response to the arbitrator's clarification, the Union mailed to each of the affected members a notice stating that they may be entitled to a portion of the punitive damages award. The note

4

advised that the employees must prove entitlement by presenting verifiable wage or other compensation losses incurred as a result of the "day off" program.

The parties maintain different interpretations of the arbitrator's original award and his subsequent clarification of that award regarding the rightful recipient of the punitive damages. These differences became irreconcilable and on August 25, 1999 plaintiffs filed suit claiming that the Union breached its duty of fair representation under the NLRA by failing to disburse the punitive damages portion of the arbitration award. Plaintiffs also aver that the defendant's actions constitute tortious conversion under Louisiana law.

In its motion for summary judgment, the Union argues that plaintiffs' duty of fair representation claims are (1) time barred by operation of the NLRA and the Labor Management Relations Act ("LMRA"); (2) subject to dismissal for plaintiffs' failure to exhaust internal union remedies under the Union's constitution and bylaws; (3) substantively without merit because the Union's actions were fair and reasonable; and (4) plaintiffs' state law tort claims for tortious conversion are preempted by Section 301 of the LMRA. Additionally, the Union argues that the arbitrator's clarification of the original award is a non-binding advisory opinion and should, therefore, be disregarded.

In their cross motion for summary judgment, plaintiffs respond that they (1) timely filed the suit within six months of the time when they knew or should have known that the Union had breached its duty of fair representation; (2) were not required to resort to administrative remedies in this case because any procedure instituted by the Union would have been ineffective in resolving their dispute; and (3) request that the court remand this matter to the arbitrator to determine the proper method of distributing the award.

5

## II. SUMMARY JUDGMENT STANDARD

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). "[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of demonstrating the existence of a genuine issue is not met by "metaphysical doubt" or "unsubstantiated assertions." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986)). The Court must "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contrary facts." *Id.* The Court does not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *See Matsushita,* 475 U.S. at 588. Finally, "the mere existence of some factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be genuine and material." *Willis,* 61 F.3d at 315. "Only disputes over facts that might affect the outcome of the suit under the governing law will preclude summary judgment." *Id.*

6

## III. ANALYSIS

In this case, the parties submitted a joint stipulation regarding the relevant facts but disagree on the legal conclusions to be drawn from those facts. The Court will address each of the issues raised by the parties.

### A. Statute of Limitations

Both parties agree that the prescriptive period applicable to this claim is a six-month prescriptive period given that the instant suit is a suit by a group of employees against their union for breach of the duty of fair representation. *See Delcostello v. Int'l Bhd. Teamsters, et al.,* 462 U.S. 151, 169 (1983). Both parties also acknowledge that the applicable limitations period begins to run "when the claimants discover, or in the exercise of reasonable diligence should discover, the acts that form the basis of their duty of fair representation claim." *See Trial v. Atchison, Topeka & Santa Fe Railway Co.,* 896 F.2d 120, 124 (5th Cir. 1990). Nevertheless, the parties disagree as to the date on which the limitation period commenced.

The Union asserts that the prescriptive period began to run in late September 1998, when its executive board stated their belief at a general union meeting, without all plaintiffs present, that the punitive award was awarded in favor of the Union and not the affected members. The Court is compelled to juxtapose this assertion with the fact that six months later, on April 8, 1999, the Union wrote a letter to the arbitrator requesting clarification as to who was entitled to the punitive damage award. If the arbitrator's opinion was not clear to the Union on April 8, 1999, and they felt it necessary to seek clarification, then it is safe to assume that the Union had not taken a final position on that date. The affected members had no reason to conclude otherwise.

7

In fact the affected members had reason to believe that their Union had reconsidered its initial opinion and was seeking a method to equitably distribute the punitive damages to the affected members. *See Gustafson v. Cornelius Co.,* 724 F.2d 75, 79 (holding that action against the union could not have accrued until the union had actually engaged in the acts of unfair representation) (citing *Butler v. Local Union 823 Int'l Bhd. of Teamsters,* 514 F.2d 442, 450 (8th Cir. 1975)). Plaintiffs should not be required to anticipate that unions will act unfairly in representing them. *See Butler,* 514 F.2d at 450. On the contrary, the union member has every right to expect that the union will fulfill its duty properly, and that there will be no occasion for a Section 301 suit. *See id.*

The Union points to several Fifth Circuit opinions in support of their contention that plaintiff's action is time-barred. However, in all three cases the court determined the start of the prescriptive period was signaled by a specific event or a written, signed and delivered document. *See Tyler v. International Bhd. of Electrical Workers Local 130 et al.,* No. CIV.A. 98-3522, 2000 WL 17839, at *3 (E.D. La. Jan. 11, 2000) (prescriptive period began the day a letter issued from union to employee informing her that her grievance was without merit); *Barrett v. Ebasco Constructors, Inc.,* 868 F.2d 170, 171 (5th Cir. 1989) (prescriptive period began when the plaintiff was told by the Union in an arbitration hearing that it would not pursue his grievance); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO,* 901 F.2d 404, 411 (5th Cir. 1990) (prescriptive period began the day a settlement agreement was signed between the union and employer).

Moreover, in a somewhat similar fact pattern, the Third Circuit held that a brief impromptu hallway meeting between a union representative and an employee did not constitute sufficient notice that the union would not proceed further with employee's grievance. *See Hersh*

*v. Allen Products* Co., 789 F.2d 230, 235 (3rd Cir. 1986). The employee left the hallway believing that her grievances were still pending with the union, and didn't know otherwise until she received a letter from the union. *See id.* at 233. The court held that the employee didn't receive notice until she received this letter. *See id.* In the case at bar, plaintiffs had reason to believe the issue was still under consideration until they received the Union's June 23 letter, which requested that plaintiffs prove entitlement to the punitive damages. This letter of June 23, 1999 constitutes the first actual notice to the employees that the Union had reached a final decision and intended to implement it.

After reviewing the undisputed facts and considering the applicable law, the Court concludes that the earliest possible moment that the plaintiffs knew or should have known that the Union had conceivably breached its duty of fair representation was on June 23, 1999. On that date, in response to the arbitrator's April 16, 1999 clarification of his award, the Union mailed notices to all members affected by the arbitrator's award stating that the affected members may be entitled to a portion of the punitive damage award if they could present "verifiable wage or other compensation losses incurred as a result of the company's work week modification struck down by the arbitrator's original award." Because suit was filed on August 25, 1999, the plaintiffs' claims have not prescribed.

## B. Exhaustion of Internal Union Remedies

The Union argues that the suit should be dismissed because the affected members failed to exhaust the union grievance procedure. Section 301 of the LMRA provides that suits for violation of contracts between an employer and a labor organization may be brought in any United States District Court. 29 U.S.C.A. § 185. Coverage of actions under Section 301 extends to

9

suits brought by employees as well as suits brought by unions. *See Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.,* 348 U.S. 437, (1955). When a Collective Bargaining Agreement ("CBA") provides for grievance procedures, these methods are the preferred method of resolving disputes. *See Republic Steel Corp. V. Maddox,* 379 U.S. 650 (1965). Further, an employee must ordinarily exhaust these remedies before bringing a suit under Section 301 of the NLRA. *Id.* The Supreme Court however has recognized that there are circumstances where exhaustion is not required. *See Glover v. St. Louis-San Francisco Ry. Co.,* 393 U.S. 324 (1969).

Where resort to internal grievance procedures would be futile, exhaustion of these internal remedies is not required. *See id.* The Fifth Circuit has recognized this ground as a reason excusing an employee from resorting to administrative remedies under the CBA. *See Rabalais v. Dresser Industries, Inc.,* 566 F.2d 518, 519 (5th Cir. 1978). The futility exception applies where the exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group that is in large part chosen by the (employer or union) against whom his real complaint is made. *See id.* (citing *Glover,* 393 U.S. at 330). Employees are excused from exhausting internal grievance procedures where doing so would result in the union conducting an investigation of itself and having to prove its own misconduct. *See Parker v. Int'l Bhd. of Teamsters,* 501 F. Supp 440, 452 (S.D. Ohio 1980) (exhaustion of internal procedures rendered futile and unnecessary where union would have to investigate its own misconduct in how it supervised election).

The Court finds that in the instant case, the futility exception to the general exhaustion requirement applies. The case is before this Court due to the parties' differing interpretations of

the arbitrator's award, and subsequent clarification of that award. The parties are on opposite ends of the argument and both have a financial interest in the outcome. Therefore, the Union's argument that the employees must turn toward the Union itself for resolution of the issue rings hollow. Requiring the employees to pursue their grievance internally, when the Union has already stated their position on the issue, appears to be a futile action that would fall within the exceptions granted to the exhaustion requirement.

## C. Preemption of Plaintiff's State Law Claims

As both parties have agreed, plaintiff's state law claims for tortious conversion of the punitive award by the Union are preempted by Section 301 of the LMRA. A union's duty of fair representation is jurisdictionally grounded in Section 301 of the LMRA. *See Hines v. Anchor Motor Freight,* 424 U.S. 554 (1976). The rule is that when a state law claim is substantially dependent on analysis of a collective bargaining agreement, a plaintiff may not evade the preemptive force of Section 301 of the LMRA by casting the suit as a state law claim. *See International Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 859 (1987).

## D. Arbitrator's Opinion

The Union argues that the arbitrator's original decision awarded the punitive damages in their favor, and that the arbitrator's subsequent clarification is not legally binding. In a letter dated April 16, 1999, in response to a request for clarification by the Union, Mr. Bankston addressed the distribution of the $100,000.00 punitive damage award by stating in pertinent part:

My opinion is that a distribution of $90,000.00 to the affected membership in further compensation of their wage loss, and $10,000.00 to the Local Union for its admirable prosecution of the case, is imminently fair and just. That is, unless the $90,000.00 is more than sufficient to make whole those members affected by the day-off program. If that is the case, then whatever

11

remains of the $90,000.00 ought properly go to the Local Union in addition to the $10,000.00, as stated.

The Court affirms Mr. Bankston's clarification letter, however the Court believes that he stopped one step short of finalizing his opinion. Mr. Bankston failed to explain how the parties are to determine which employees were not made whole by the compensatory damage award, and how the parties are to determine the amount of additional award each employee was entitled to receive.

As Mr. Bankston himself points out, proving the total lost wages of each employee was a difficult task.[2] In his April 16 clarification letter, he describes his desire to supplement the employee's lost wages award, however does not explain how the employees are to prove their losses considering the difficulty the Union had trying to do so during the original arbitration hearing. With this in mind, the Court remands the issue to Mr. Bankston, charging him with the task of developing a suitable and fair method or formula for determining how much each affected employee should receive and what they need to produce to prove their loss.

The Union claims that the common law doctrine of functus officio renders the arbitrator's April 16 clarification letter meritless. The functus officio doctrine bars an arbitrator from revisiting the merits of an award once the award has been rendered.[3] However, a widely accepted

---

[2] At page 2-3 of the original arbitration supplemental opinion and award delivered July 18, 1997, Mr. Bankston attributes the fact that the Union was only able to show actual employee back pay losses of $152,323.42, while known losses were close to $300,000.00, because the National Gypsum Company "trashed its scheduling records after the Union had requested production of those records. Part of the records were retrieved by a vigilant Union from a Company dumpster." Additionally, pertinent schedules and time cards were missing or not supplied by the company.

[3] This definition of functus officio is according to F. Elkouri & E. Elkouri, *How Arbitration Works* (4th ed. 1985). It is a fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted, he is functos officio and can do nothing more in regard to the subject matter of the arbitration. *See McClatchy News papers v. Central Valley Union*, 686 F.2d 731, 734 (9th Cir. 1982). The recognized exceptions to the doctrine are that the arbitrator can correct a mistake which is apparent on the face of his award, complete an arbitration that is not complete, and clarify an ambiguity in the award. *See id.*

12

exception to this doctrine occurs when a federal court finds that an award is incomplete or ambiguous, in which case the court often remands it to the arbitrator for clarification. *See International Bhd. of Elec Workers v. New England Tel. & Tel. Co.,* 628 F.2d 644, 647 (1st Cir. 1980). The foundation for a federal court's power to remand an ambiguous arbitration award is the policy in favor of clear final awards that completely resolve the dispute originally submitted to the arbitrator. *See id.*

It is not the court's place to determine the intent of an arbitrator when the award fails to make the arbitrator's intent clear. *See New York Bus Tours Inc., v. Kheel*, 864 F.2d 9, 12 (2nd Cir. 1988). Consistent with the case law and federal statutes, a court should not undertake to construe the meaning of arbitration awards where they are unclear. *See id.* This would only serve to undermine the authority of arbitrators. *See id.* Where parties have elected to submit their disputes to arbitration, they should be completely resolved by arbitration, rather than only partially resolved. *See Iron Workers Local #272 v. Bowen,* 624 F.2d 1255, 1264 (5th Cir. 1980) (citing *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Division,* 481 F.2d 821, 825 (5th Cir. 1973)). *See also United Steelworkers of America v. Bradley,* 551 F.2d 72, 73 (5th Cir. 1977) (where ambiguous phrase in the arbitrator's award was the fulcrum of the dispute, the court remanded to the arbitrator). The Court at this juncture is left with two possible options: (1) to start the grievance procedure over again resulting in a second arbitrator interpreting the language of the original arbitrator; or (2) the more efficient and preferred option, and the option that the Court adopts today, is to remand to the original arbitrator who is already familiar with the details of the case. *See United Steelworkers of America v. Interpace Corp.,* 447 F.Supp. 387, 391 (W.D. Pa. 1978); *See also Automotive, Petroleum and Allied Indus. Employees Union v. Sears,*

*Roebuck and Co.,* 581 F. Supp. 672, 677 (E.D. Mo. 1984). Court clarification would amount to preemption of the arbitrator's fact-finding function, and this Court declines to do so. *See id.*

## IV.  CONCLUSION

For the forgoing reasons, the Court finds that plaintiffs' action is not time barred, and that plaintiffs are excused from the general requirement of the collective bargaining agreement to exhaust all internal grievance procedures due to the well established futility exception. Additionally, this Court finds that the arbitrator's clarification of his supplemental award is legally binding under the permitted exceptions to the doctrine of functus officio and that it is well within this Court's discretion to remand to the arbitrator for final clarification.

For the foregoing reasons, defendant's motion for summary judgment is HEREBY DENIED and plaintiffs' cross motion for summary judgment is GRANTED. The suit is remanded to the arbitrator originally assigned to the case by the parties for final resolution on the issue of proper distribution of the punitive damage award.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TONY BAROUSSE, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 99-2600** |
| **PAPER, ALLIED-INDUSTRIAL, ET AL.** | **SECTION "L" (2)** |

**ORDER & REASONS**

Before the Court is the motion of defendant Paper, Allied-Industrial, Chemical & Energy Workers International Union, and its affiliated Local Union No. 4-447 (collectively the "Union") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Also before the Court is the cross motion of plaintiff Tony Barousse and 26 other named employees of National Gypsum Company (the "Employees") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion for summary judgment is DENIED and plaintiffs' cross motion for summary judgement is GRANTED. The case is remanded to the arbitrator originally assigned to the case by the parties for final resolution on the issue of proper distribution of the punitive damage award.

1